### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **LETICIA KELLEY,** | : | |
| | : | **Civil Action Number:** |
|    **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **Jury Trial Demanded** |
| | : | |
| **CARECLOUD CORPORATION,** | : | |
| | : | |
|    **Defendant** | : | |

### COMPLAINT

Plaintiff Leticia Kelley ("Ms. Kelley") brings this Complaint against Defendant CareCloud Corporation ("CareCloud") and shows the Court as follows:

### INTRODUCTION

1.

Ms. Kelley brings this action under the Fair Labor Standards Act to recover due but unpaid overtime compensation plus an additional like amount as liquidated damages and to be reimbursed her costs of litigation, including her reasonable attorneys' fees.

2.

Ms. Kelley further seeks to recover damages arising out of Defendant's fraudulent filing of information returns with the Internal Revenue Service which

- 1 -

fraudulently classified her as an independent contractor in violation of 26 U.S.C. § 7434.

3.

In addition to her federal causes of action, Ms. Kelley asserts pendent state law claims which arise out of the same set of operating facts as her federal claims. These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

**JURISDICTION AND VENUE**

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

This Court has supplemental jurisdiction over Ms. Kelley's state law claims set forth herein arising under Georgia law in accord with 28 U.S.C. §1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

6.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

7.

Ms. Kelley resides in DeKalb County, Georgia.

8.

CareCloud is a corporation organized under the laws of the State of Florida.

9.

CareCloud is subject to the personal jurisdiction of this Court.

10.

CareCloud may be served with process through its registered agent Albert Santalo, 5200 Blue Lagoon Drive, Suite 900, Miami, Florida 33126.

## FACTUAL ALLEGATIONS

11.

CareCloud employed Ms. Kelley as a Consultant from September 23, 2013 until August 26, 2014.

12.

At all times material hereto, Ms. Kelley was an "employee" of CareCloud as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

13.

From on or about September 23, 2013 until August 26, 2014, Ms. Kelley was "engaged in commerce" as an employee of CareCloud as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

14.

At all times material hereto, CareCloud was an "employer" of Ms. Kelley as defined in FLSA § 3(d), 29 U.S.C. §203(d).

15.

From on or about September 23, 2013 until August 26, 2014, CareCloud was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

16.

During 2013, CareCloud had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

17.

During 2014, CareCloud had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

18.

During 2013, CareCloud had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A), including computers, cellular telephones and office supplies.

19.

During 2014, CareCloud had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A), including computers, cellular telephones and office supplies.

20.

During 2013, CareCloud had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

21.

During 2014, CareCloud had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

22.

At all times material hereto, CareCloud was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

23.

At all times material hereto, Ms. Kelley was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

24.

At all times material hereto, CareCloud did not employ Ms. Kelley in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

25.

At all times material hereto, CareCloud did not employ Ms. Kelley in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

26.

At all times material hereto, CareCloud did not employ Ms. Kelley in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

27.

At all times material hereto, CareCloud did not employ Ms. Kelley in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

28.

As a matter of economic reality, Ms. Kelley was an employee of CareCloud.

29.

At all times material hereto, CareCloud required Ms. Kelley to comply with its instructions about when, where and how she was to perform her duties and reserved to itself the right to control how she achieved her work results.

30.

At all times material hereto, Ms. Kelley's work and services were integrated into CareCloud's business operations and were important to the success and continuation of CareCloud's business.

31.

At all times material hereto, CareCloud required Ms. Kelley to perform her services for CareCloud personally.

32.

At all times material hereto, CareCloud did not permit Ms. Kelley to hire, supervise or pay employees of her own to perform any of the services she provided to CareCloud.

33.

At all times material hereto, CareCloud set the hours and schedules which Ms. Kelley was required to work.

34.

At all times material hereto, CareCloud required Ms. Kelley to work on a full time basis for CareCloud.

35.

At all times material hereto, CareCloud provided Ms. Kelley with daily work assignments.

36.

At all times material hereto, CareCloud compensated Ms. Kelley for her work via an hourly wage.

37.

At all times material hereto, CareCloud supplied Ms. Kelley with the tools, equipment and supplies that she required to perform her work for CareCloud.

38.

At all times material hereto, CareCloud supplied Ms. Kelley with the laptop she utilized to perform her work for CareCloud.

39.

At all times material hereto, Ms. Kelley did not make or maintain a significant investment in any of the facilities or equipment that she used in performing her work for CareCloud.

40.

At all times material hereto, Ms. Kelley was not able to earn any profit or suffer any loss other than by earning hourly wages for the time she worked for CareCloud.

41.

At all times material hereto, Ms. Kelley made her services available exclusively to CareCloud and not to the general public.

42.

At all times material hereto, CareCloud required that all ideas, know-how, processes, equipment, documents, designs, models, inventions copyrightable

material and other tangible and intangible materials which Ms. Kelley authored, prepared, created, made, delivered, conceived or reduced to practice in whole or in part in the course of working for CareCloud were and would remain the sole and exclusive property of CareCloud.

43.

At all times material hereto, CareCloud required that all ideas, know-how, processes, equipment, documents, designs, models, inventions copyrightable material and other tangible and intangible materials which Ms. Kelley authored, prepared, created, made, delivered, conceived or reduced to practice in whole or in part in the course of working for CareCloud were and would be considered works made for hire.

44.

At all times material hereto, CareCloud required that Ms. Kelley assign to CareCloud, and waive, any rights to all ideas, know-how, processes, equipment, documents, designs, models, inventions copyrightable material and other tangible and intangible materials which Ms. Kelley authored, prepared, created, made, delivered, conceived or reduced to practice in whole or in part in the course of working for CareCloud.

45.

At all times relevant hereto, CareCloud and Ms. Kelley were parties to an open ended contract which provided that either party could terminate the Contract by giving the other party 30 days of notice.

46.

At all times material hereto, CareCloud recognized Ms. Kelley's right to resign her employment at will.

47.

At all times material hereto, CareCloud classified Ms. Kelley as an independent contractor.

48.

At all times material hereto, CareCloud misclassified Ms. Kelley as an independent contractor.

49.

At all times material hereto, CareCloud willfully misclassified Ms. Kelley as an independent contractor rather than the employee she actually was.

## COUNT I - FAILURE TO PAY OVERTIME
50.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

51.

At all times material hereto, Ms. Kelley was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

52.

During her employment with Defendant, Ms. Kelley regularly worked in excess of forty (40) hours each week.

53.

Defendant failed to pay Ms. Kelley at one and one half times her regular rate for work in excess of forty (40) hours in any week from September 23, 2013 through August 26, 2014.

54.

Defendant willfully failed to pay Ms. Kelley at one and one half times her regular rate for work in excess of forty (40) hours in any week from September 23, 2013 through August 26, 2014.

55.

Ms. Kelley is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

56.

As a result of the underpayment of overtime compensation as alleged above,

Ms. Kelley is entitled to liquidated damages in accordance with FLSA § 16(b), 29

U.S.C. § 216(b).

57.

As a result of the underpayment of overtime compensation as alleged above,

Ms. Kelley is entitled to her litigation costs, including her reasonable attorneys'

fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II - FRAUDULENT FILING OF TAX INFORMATION RETURNS IN VIOLATION OF 26 U.S.C. § 7434

58.

The allegations in all previous paragraphs are incorporated by reference as if

fully set out in this paragraph.

59.

In 2014, CareCloud filed a Form1099-MISC with the Internal Revenue Service

in which it categorized monies it paid to Ms. Kelley in 2013 as non-employee

compensation.

60.

In 2015, CareCloud filed a Form1099-MISC with the Internal Revenue Service in which it categorized monies it paid to Ms. Kelley in 2014 as non-employee compensation.

61.

At all times material hereto, Ms. Kelley has been Defendants' employee, and not an independent contractor.

62.

Defendant was aware that Ms. Kelley has been Defendants' employee, and not an independent contractor.

63.

Defendant should have been aware that Ms. Kelley has been Defendants' employee, and not an independent contractor.

64.

Defendant misclassified Ms. Kelley as an independent contractor for the purpose of evading payroll taxes.

65.

Defendant misclassified Ms. Kelley as an independent contractor for the purpose of evading social security taxes.

66.

Defendants intentionally, willfully, and fraudulently misclassified Ms. Kelley as an independent contractor and filed fraudulent Forms 1099 with respect to Ms. Kelley for Defendants' own enrichment.

67.

As a result of Defendants' intentional, willful, fraudulent, and malicious filing of false tax information returns with respect to Ms. Kelley, Ms. Kelley is entitled to recover damages up to and including any actual damages sustained, not less than $5,000 per fraudulent filing, as well as her costs of litigation including her reasonable attorney's fees, pursuant to 26 U.S.C. § 7434.

## COUNT III – BREACH OF CONTRACT

68.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

- 15 -

69.

Ms. Kelley and CareCloud were parties to a contract of employment ( "the Contract") from on or about September 23, 2013 through August 26, 2014.

70.

The Contract provided that CareCloud would pay Ms. Kelley for work that was performed by Ms. Kelley on behalf of and for the benefit of CareCloud.

71.

The Contract further provided that "Either party may terminate this Agreement during the Term, or any extensions thereof, by giving the other party a 30-day written notice of their intent to terminate.

72.

On August 26, 2014, Ms. Kelley's manager at CareCloud gave verbal notification to Ms. Kelley that Carecloud was terminating the Contract.

73.

CareCloud failed to provide Ms. Kelley with a 30-day written notice of their intent to terminate as required by the Contract.

74.

CareCloud's failure to provide Ms. Kelley with a 30-day written notice of their intent to terminate the Contract constitutes a material breach of contract.

75.

CareCloud's failure to pay Ms. Kelley for work she performed on August 25, 2014 and August 26, 2014 also constitutes a material breach of the Contract.

76.

As the direct and foreseeable result of these breaches, Ms. Kelley has sustained and continues to sustain damages in an amount to be proved at trial.

**COUNT IV – QUANTUM MERUIT**

77.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

78.

From on or about September 23, 2013 through August 26, 2014, Ms. Kelley served as a Consultant for CareCloud.

79.

At times material thereto and with the knowledge of CareCloud, Ms. Kelley's time sheet did not accurately record the number of hours that she worked on behalf of CareCloud.

80.

Ms. Kelley's service as a Consultant for CareCloud as described above was valuable to CareCloud.

81.

CareCloud requested Ms. Kelley's service as a Consultant.

82.

CareCloud knowingly accepted Ms. Kelley's service as a Consultant.

83.

The receipt of Ms. Kelley's services as a Consultant for CareCloud without compensation would be unjust.

84.

Ms. Kelley expected to be compensated at the time she provided her services as a Consultant.

85.

Ms. Kelley is entitled to a recover from CareCloud the reasonable value of the services she provided as a Consultant for CareCloud, in an amount to be determined at trial.

## COUNT V - PROMISSORY ESTOPPEL
86.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

87.

On September 23, 2013, CareCloud promised to pay Ms. Kelley in return for Ms. Kelley's service as a Consultant for them.

88.

At times material thereto and with the knowledge of CareCloud, Ms. Kelley's time sheet did not accurately record the number of hours that she worked on behalf of CareCloud.

89.

CareCloud should have reasonably expected that Ms. Kelley would induce action in reliance of said promise, i.e., serve as a Consultant for CareCloud.

90.

CareCloud's promise induced Ms. Kelley to act in reliance thereof, i.e., to serve as a Consultant for CareCloud, to her detriment.

91.

Ms. Kelley's service as a Consultant for CareCloud conferred a benefit on CareCloud.

92.

CareCloud failed to pay Ms. Kelley in accordance with their promise.

93.

Ms. Kelley relied on CareCloud's promise.

94.

Ms. Kelley's reliance on CareCloud's promise was reasonable.

95.

Injustice can only be avoided by enforcement of CareCloud's promise.

96.

Ms. Kelley is entitled to a recover from CareCloud the reasonable value of the services she provided as a Consultant for CareCloud, in an amount to be determined at trial.

**WHEREFORE**, Ms. Kelley respectfully prays:

1. That Plaintiff's claims be tried before a jury;

2. That Plaintiff be awarded an amount to be determined at trial against CareCloud in unpaid overtime compensation due under the FLSA, plus an additional like amount in liquidated damages;

3.     That Plaintiff be awarded an amount to be determined at trial against

CareCloud for no less than $5,000 for each fraudulent tax return with respect

to Ms. Kelly;

4.     That Plaintiff have and recover judgment against CareCloud for the pendent

State claims herein asserted in amounts to be proved at trial;

5.     That Plaintiff be awarded costs of litigation, including her reasonable

attorneys' fees from CareCloud; and

6.     For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
& FITZPATRICK, LLC

/s/CHARLES R. BRIDGERS
3100 CENTENNIAL TOWER             CHARLES R. BRIDGERS
101 MARIETTA STREET               GA. BAR NO. 080791
ATLANTA, GEORGIA 30303
(404) 979-3171                    /s/ KEVIN D. FITZPATRICK, JR.
(404) 979-3170 (f)                KEVIN D. FITZPATRICK, JR.
kevin.fitzpatrick@dcbflegal.com   GA. BAR NO. 262375
charlesbridgers@dcbflegal.com
                                  COUNSEL FOR PLAINTIFF